GARY M. RESTAINO
United States Attorney
District of Arizona

LISA M. HEMANN
Assistant United States Attorney
Arizona State Bar No. 024703
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, AZ 85004-4449
Telephone: (602) 514-7500
Fax: (602) 514-7693
Lisa.Hemann@usdoj.gov

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arrow Indian Contractors, Inc., <br><br> Plaintiff, <br><br> v. <br><br> United States Federal Highway Administration, Central Federal Lands Division, <br><br> Defendant. | No. CV-23-02085-PHX-MTL <br><br> **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant United States Federal Highway Administration ("FHWA"), pursuant to Fed. R. Civ. P. 56, moves for summary judgment on the basis that it conducted a search reasonably calculated to uncover all relevant documents requested by Plaintiff Arrow Indian Contractors, Inc. in their request for records under the Freedom of Information Act. This Motion is supported by the following Memorandum of Points and Authorities, by Defendant's Statement of Facts, the exhibits thereto ("DSOF"), and by all matters of record.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  SUMMARY OF ARGUMENT

This is a civil action seeking injunctive relief and attorney's fees based on the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Doc. 1. Plaintiff essentially challenges the adequacy of Defendant's search in response to two FOIA requests. Plaintiff made the FOIA requests were made seeking records in connection with a road construction project known as the Red Cloud Mine Road project in which Plaintiff Arrow Indian Contractors, Inc. ("AIC" or "Plaintiff") was a contractor.

To prevail in a FOIA action where the adequacy of the search is at issue, the Defendant agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Zemansky v. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985). The fundamental question is not whether other documents possibly responsive to the request might exist, but rather "whether the *search* for those documents was *adequate*." *Id.* (emphasis in original). Thus, the focus is on the effort, not on the result. *See id.*

AIC has received all relevant documents that FHWA could locate as of the date of this Motion[1], but nevertheless asserts that FHWA failed to produce correspondence involving another contractor, Q.C. Testing, Inc., relating to the Red Cloud Mine Road project. DSOF at ¶ 48. Defendant dutifully searched for and produced all responsive

---

[1] As the Court is aware, Defendant is currently conducting an additional review of a source of potentially responsive documents. Defendant intends to release any such responsive documents upon completion of review for exemptions.

documents subject to statutory withholdings. DSOF at ¶¶ 23-47. AIC filed the instant lawsuit shortly prior to FHWA's release of documents related to AIC's second FOIA request, but even after receiving those records, maintained that responsive documents were not produced. Doc. 1; DSOF ¶¶ 47, 48. Thus, upon filing of this litigation, FHWA continued to work with AIC to identify and produce the documentation AIC believed was missing from the original FOIA releases. DSOF ¶ 48. In large part, AIC seeks copies of text messages between a former federal employee and an employee of Q.C. Testing, Inc., which AIC asserts were located on the former federal employee's personal cell phone. DSOF ¶¶ 48, 49. Despite not having control over the former employee's personal phone, FHWA endeavored to obtain any such messages to provide to AIC. DSOF ¶¶ 52-57. Unfortunately, obtaining copies of the relevant text messages has proven to be logistically challenging, leaving AIC dissatisfied with these efforts.

As set forth in the attached declaration, Defendant has made a reasonable effort to search its files for the records AIC requested, using methods that would be reasonably expected to locate any such documents. DSOF at ¶¶ 23-47. Moreover, even after suit was filed, Defendant continued to work with AIC to ascertain the specific records AIC was seeking, continued to engage in efforts to collect copies of text messages that might exist, and even now continues to search for records to release to AIC. DSOF at ¶¶ 58, 62. Despite not locating and producing all the communications and/or text messages that AIC believed existed, the Court should grant summary judgment in favor of Defendant because the FHWA has met the *Zemensky* standard as a matter of law, by performing an objectively adequate search. 767 F.2d at 571.

**II.    FACTUAL AND PROCEDURAL HISTORY**

    **A.    FHWA's General Process for Handling FOIA Requests.**

FHWA is a modal operating administration within the Department of Transportation ("DOT"). DSOF at ¶ 1. When FHWA receives a FOIA request, the first step is to determine which program offices within FHWA are reasonably likely to possess records responsive to that request, if any, and to initiate searches within those program offices.

This determination is based on the description of the records requested and requires a familiarity with the holdings of FHWA's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous FHWA program offices. Factors such as the nature, scope, and complexity of the request itself are also relevant. DSOF at ¶ 2.

Each program office within FHWA has a designated point of contact ("POC") who is the primary person responsible for communications between the program office and the main FHWA FOIA Office located in the Office of Administration ("HAD" or "the HAD FOIA office") in FHWA headquarters. DSOF at ¶ 3. FOIA POCs are the FOIA professionals who directly interact with FOIA requesters and are responsible for the day-to-day implementation of the FOIA. Each POC is a person with knowledge about the operations of their program office. DSOF at ¶ 4. Further, FHWA's FOIA Program is decentralized, meaning that FOIA POCs in each of FHWA's approximately 73 Program, Division, or Federal Lands offices are responsible for processing requests assigned to their office. DSOF at ¶ 5.

The authority to issue initial determinations on FOIA requests, including initial denials of access to records and of fee waivers or fee waiver reductions has been delegated to all Associate Administrators, Chief Counsel, Chief Financial Officer, Directors of Field Services, Chief Technical Services Officer, Resource Center Director, Division Administrators, and FLH Division Engineers. Each of these officials is also authorized to re-delegate this authority to subordinate officials. DSOF at ¶ 6. FOIA POCs receive requests in a variety of ways, including (1) directly from the requester via email, USPS or FedEx; (2) receiving an internal referral from the HAD FOIA office, which, again, houses the primary FOIA office in FHWA's headquarters in Washington, D.C.; (3) via the DOT FOIA Public Access Link on DOT's website; or (4) via the National FOIA Portal (FOIA.gov). DSOF at ¶ 7.

Once the appropriate program office for a given request is determined, the POC at the pertinent program office is provided with a copy of the FOIA request and is instructed

3

to conduct a search for responsive records. DSOF at ¶ 8. Upon receipt, the POCs review the FOIA request along with any request-specific instructions that may have been provided. Based on the POC's experience and knowledge of their program office's practices and activities, the POC will forward the request and instructions to individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. DSOF at ¶ 9. Individuals and component offices are directed to conduct searches of the files, including both paper files and electronic files that, based on their judgment and knowledge of the way they routinely keep records, would most likely be the files to contain responsive documents. After those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, with instructions as to recommended withholdings as appropriate. DSOF at ¶ 10. Upon receipt of the potentially responsive records, the POC may sometimes finalize the FOIA responses on their own, or the POC may forward those records to the HAD FOIA office for assistance or additional review. In some instances, the HAD FOIA office (in collaboration with the Office of Chief Counsel) reviews the collected records for responsiveness and application of withholdings. DSOF at ¶ 11.

FHWA program offices use various methods to maintain records and FHWA employees maintain records in several ways as individual employees, including storing electronic records on their individual computer hard drives, their individual system drives, their program offices' shared drive (if the office uses one), or USB storage devices. DSOF at ¶ 12. The determination of whether or not these electronic locations need to be searched in response to a particular FOIA request, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his or her files. DSOF at ¶ 13. Additionally, all FHWA employees have access to email. FHWA uses the Microsoft Outlook email system. FHWA employees use various methods to store their Microsoft Outlook email files. Like other searches of emails, an employee will complete a search of email archives if it is determined that the archive may contain potentially responsive documents; this determination is based on the FOIA request, any potential

instructions provided by the HAD FOIA office and/or the program office POC, and his/her knowledge of the method in which he/she stores emails. DSOF at ¶ 14.

FHWA processes FOIA requests as quickly as possible on a first-in, first-out basis. DSOF at ¶ 15. The time it takes to respond to each FOIA request varies depending on the complexity of the request itself and the backlog of requests already pending in FHWA's FOIA queue. Although FHWA makes every effort to respond to FOIA requests as quickly as possible, in some cases the Agency cannot do so within the time specified in the FOIA and additional time is needed. DSOF at ¶ 16. In Fiscal Year 2023, the Department of Transportation received 17,136 FOIA requests and processed 16,458 of those FOIA requests. DSOF at ¶ 17.

**B.      Plaintiff's FOIA Requests and FHWA's Search for Responsive Records.**

Plaintiff entered a contract with the Federal Highway Administration Central Federal Lands Highway Division on July 30, 2021 for the Red Cloud Mine Road Project. DSOF at ¶ 18. The Red Cloud Mine Road Project and any disputes related to it are not the subject of this lawsuit. However, Plaintiff submitted two FOIA requests to Defendant regarding the Red Cloud Mine Road Project: the first was dated December 5, 2022 and the second is dated December 15, 2022. DSOF at ¶ 19. Upon receipt, DOT assigned the first request control number 2023-0044 and the second request control number 2023-0048. DSOF at ¶¶ 21, 22.

AIC's FOIA requests sought records maintained by FHWA's Central Federal Lands office ("CFL"). Therefore, the HAD FOIA office determined that CFL should be tasked as the program office most likely to have responsive records. DSOF at ¶ 20. Upon receipt, the POC for CFL, Shannon Schreiner, reviewed the requests and contacted the employees that she determined would be responsible for locating records responsive to FOIA #1 and FOIA #2. As part of her instructions, Schreiner identified folders on the CFL shared drive where there were likely responsive documents. DSOF at ¶ 23. CFL employees Dustin Robbins, Barbara Quintana, Julian Gonzalez, Ken Meister, James Rathke, Curtis Scott, and Andrew Dempsey searched and compiled responsive documents for the two FOIA

5

requests. They, Schreiner, and Project Management Branch Chief Wendy Longley comprised the CFL FOIA team for AIC's two requests. DSOF at ¶ 24.

On January 12, 2023, Longley allocated the appropriate staff to respond to each item of the FOIA requests, with Rathke, Quintana, Gonzalez, and Robbins as the leads on collecting documents relating to the different categories. CFL employees searched through emails and documents to try and locate content that might be responsive to the two FOIA requests. DSOF at ¶ 25. Schreiner and CFL employee Jody Forman compiled and organized the responsive documents into folders. DSOF at ¶ 26. Responsive documents were found on the CFL shared drive in a folder called "AZFLAP 202(2) Red Cloud Mine Rd." CFL employees searched for records relating to Solicitation FHWA No. 6982AF21B000007, including the Final Acquisition Plan, the Written Engineer's Estimate, and FHWA evaluations regarding the Estimate. CFL employees also searched for files relating to FHWA Contract No. 6982AF21C000030. DSOF at ¶ 27.

On January 13, 2023, Longley sent an email summarizing the progress to date on FOIA #1 and FOIA #2: all documents for FOIA #1 had been compiled and the CFL FOIA team had identified those documents that should be withheld and/or redacted or released in full. Regarding FOIA #2, the CFL FOIA team was still compiling documents that would need to be reviewed for exemptions. DSOF at ¶ 28. On that same date, Schreiner updated AIC President Sheila Curleyhair via email, advising her that FHWA needed an extension of the deadline regarding FOIA #2 due to unusual circumstances. The letter explained that she and/or AIC had the opportunity to narrow the scope of the FOIA request to increase the processing speed. DSOF at ¶ 29.

The following week, Quintana provided additional contextual information to the CFL FOIA team via email regarding Item Nos. 7 through 10 on FOIA #2. Specifically, she explained that the request was for documents between FHWA and Q.C. Testing, but that the Quality Control Manager was Bravo Co. VI, LLC, which is related to but not the same as Q.C. Testing. DSOF ¶ 30. She went onto explain that the inspector, as a result of the relationship between the two companies, could have been an employee of Q.C. Testing,

6

but that FHWA did not know for certain. Based on that context, she did not believe there were responsive documents for Items 7 through 10 of FOIA #2. *Id.*

The CFL FOIA team continued working on the agency's response to FOIA #2. DSOF at ¶¶ 31-33. Quintana updated the CFL FOIA team that she had gathered documents responsive to Item No. 11 and provided more information regarding the search for records on Item 9. DSOF ¶ 32. Specifically, she found emails that copied Q.C. Testing, but that Item 9 requested all "reports, recommendations, photographs, email correspondence, text messages and other documents prepared by Q.C. Testing, Inc. and provided to FHWA," so she did not think they were responsive. DSOF at ¶ 31. The following day, Quintana updated the CFL FOIA team, once again explaining why the items were "muddled" and that she believed she had provided all responsive documents regarding Q.C. Testing. DSOF at ¶ 32.

On February 14, 2023, Curleyhair spoke with Schreiner about the FOIA requests and the extension. Schreiner updated Curleyhair and explained that the requests had been forwarded to her superiors, and that the responses had been referred to the HAD FOIA office in headquarters for a second level of review. DSOF at ¶ 34. On March 9, 2023, Schreiner emailed the HAD FOIA office for an update on the review process of FOIA #2. HAD advised that FOIA #2 was in its queue for review, but that there were several FOIA requests ahead of it in line. HAD further explained that the Office of Chief Counsel would not begin its review until HAD completed its review. DSOF at ¶ 35.

The following week, on March 13, 2023, HAD informed Schreiner that the CFL FOIA team's response for FOIA #1 had been forwarded to the Office of the Chief Counsel for the final level of review, but that the response for FOIA #2 required additional work before HAD could complete its review. In particular, emails needed to be removed from batched form, attachments needed to be included with parent emails, and certain redactions had been fully applied but not marked with an exemption number. DSOF ¶ 36. The HAD FOIA office asked Schreiner and the CFL FOIA team to resubmit the documents once the changes were made. *Id.* On March 28, 2023, Schreiner notified the CFL FOIA team that

the responsive documents for FOIA #2 had been sent to headquarters on March 8, 2023, but that they were returned for additional work, which she was handling. Schreiner informed the CFL FOIA team that headquarters needed her to change bulk portfolio PDF files to individual PDF files, and that moving forward, the CFL FOIA team should no longer organize records into PDF portfolios. DSOF at ¶ 37.

On April 21, 2023, once review by the Office of the Chief Counsel was complete, FHWA issued its final response to FOIA #1, providing AIC with sixteen (16) documents (176 pages) released in full and seven (7) documents (15 pages) released in part with redactions pursuant to FOIA Exemption (b)(6). DSOF at ¶ 38. Schreiner sent the response via FHWA's Secure Large File Transfer System, and the response was sent to Curleyhair's email address. DSOF at ¶ 39. Subsequently, an employee in HAD also called Curleyhair and informed her that FHWA was still processing FOIA #2. DSOF at ¶ 40.

Between May 2023 and November 2023, FHWA conducted multiple levels of review of FOIA #2 and encountered several administrative issues during the processing of the FOIA request. DSOF at ¶ 41. First, in June, the Chief Counsel's Office was conducting final review of the response to FOIA #2 and identified issues that needed to be addressed by the CFL FOIA team. DSOF at ¶ 42. Communications between the Chief Counsel's Office and the CFL FOIA team addressing issues with the response to FOIA #2 took place throughout August of 2023. DSOF at ¶ 43. Subsequently in September 2023, FHWA experienced IT issues with the document production itself in that some of the responsive files had been corrupted and could not be opened, so the Chief Counsel's Office asked Schreiner to resend those files. DSOF at ¶ 44. Those IT issues continued into October 2023 when some of the new files were not accessible due to erroneous password protection. DSOF at ¶ 45. As these issues were ongoing, AIC filed its Complaint (on October 5, 2023) alleging generally that Defendant was unlawfully withholding documents by failing to respond to Plaintiff's FOIA requests in a timely fashion. DSOF at ¶ 46.

By early November, FHWA resolved the outstanding substantive and administrative issues and, on November 6, 2023, issued the final response letter to FOIA #2. The response

indicated that approximately 2,169 pages were being released in full and 18 pages were being partially released as some of the material contained information exempt under FOIA exemptions (b)(5) and (b)(6). DSOF at ¶ 47.

Subsequently, and after this litigation commenced, FHWA attempted to ascertain which documents AIC believed had been missing in its responses to FOIA #1 and FOIA #2. AIC believed FHWA had not provided all correspondence between FHWA and Q.C. Testing, and identified specifically four items from FOIA #2:

> 7. Copies of all correspondence and attachments to said correspondence between FHWA and Q.C. Testing Inc. referring to or in any way related to AIC between July 30, 2021, and December 15, 2022.
>
> 8. Copies of all correspondence and attachments to said correspondence between FHWA and Q.C. Testing Inc. referring to or in any way related to Prime Contract 6982AF21C000030 between July 30, 2021, and December 15, 2022.
>
> 9. All reports, recommendations, photographs, email correspondence, text messages and other documents prepared by Q.C. Testing, Inc and provided to FHWA, relating to or referring to Prime Contract 6982AF21C000030 and/or AIC between July 30, 2021, and December 15, 2022.
>
> 10. Copies of all correspondence and attachments to said correspondence between FHWA and Q.C. Testing Inc. referring to or in any way related to Prime Contract 6982AF21C000030 between Jan 1, 2021, and December 15, 2022.

DSOF at ¶ 48. AIC specifically noted that an FHWA employee, Quintana, had "offered up her personal cell phone to all employees and subcontractors due to her Government cell phone not having as good as service on site" and, as such, that AIC expected "to receive all text messages from her personal phone and government phone with communication from any Q.C. testing employee (especially Russ Roberts) related to the project." DSOF at ¶ 49.

Based on these clarifications from AIC, FHWA proceeded to search for additional responsive records, including from Quintana's government-issued phone. Since Quintana

had retired from FHWA on October 9, 2023, FHWA contacted the Office of General Counsel ("OGC"), who in turn contacted the Office of the Chief Information Officer ("OCIO") regarding Quintana's government phone. OCIO responded that Quintana's government phone had by then been decommissioned, deactivated, and wiped. DSOF at ¶ 50. FHWA, through OGC and OCIO, investigated other methods of retrieving any possible messages that existed on Quintana's government-issued phone, including by attempting to retrieve the messages directly from the service carrier, Verizon. FHWA was informed that a subpoena would be required to produce records but, regardless, Verizon does not produce text message content in response to civil subpoenas, and only discloses the content of text messages in criminal cases. DSOF at ¶ 51.

Since AIC explicitly identified Quintana's personal cell phone as an issue with FHWA's response to FOIA #2, FHWA also tried to locate and obtain text messages from Quintana's personal cell phone. This proved to be problematic because FHWA never had control over Quintana's personal phone, and because Quintana was no longer a federal employee. DSOF at ¶ 52. Still, FHWA was able to reach Quintana and she agreed to conduct a search on her personal phone. On March 11, 2024, she found a text chain with Matthew Hadley, AIC's Superintendent, and Justin Renfro, an employee of Q.C. Testing. DSOF at ¶ 53. These were turned over to FHWA's counsel and produced to AIC's counsel on March 29, 2024. DSOF at ¶ 54.

FHWA next attempted to obtain copies of the text messages through the other individuals participating in the text message threads. To that end, AIC, through counsel, provided a list of names of individuals who might have been copied on the pertinent text exchanges. DSOF at ¶ 55. One FHWA employee, Angel Ramirez, was copied on many responsive text messages between Q.C. Testing, Bravo, and Quintana, and was therefore able to provide copies of multiple text messages. All the messages were released to AIC through counsel on April 17, 2024. DSOF at ¶ 56. In total, FHWA released an additional 621 pages of text messages. DSOF at ¶ 57.

When FHWA re-reviewed item numbers 7 through 10 of FOIA #2, it began to suspect that there would likely be other sources of documents that might be responsive to items 7 through 10 that were not previously processed. DSOF at ¶ 61. Thus, the Agency is currently processing a new batch of potentially responsive documents, including gathering and reviewing these documents for responsiveness and potential applicable FOIA exemptions. DSOF at ¶ 62.

FHWA's understanding is that AIC currently seeks email correspondence and text messages prepared by Bravo employees (e.g., Mr. Russell Roberts). DSOF at ¶ 58. However, AIC's FOIA #2 does not ask for text messages and e-mails prepared by Bravo employees. DSOF at ¶ 59. FHWA believes that there could have been more responsive documents if Plaintiff had asked for email correspondence from Bravo employees, but that was not AIC's request. DSOF at ¶ 60. Apart from items 7 through 10 of FOIA #2, FHWA is unaware of any other potential deficiencies in its responses to FOIA #1 and FOIA #2, nor has Plaintiff pointed to any other potential deficiencies as of the filing of this Motion. DSOF at ¶ 63.

## III. LEGAL STANDARDS

"As a general rule, all FOIA determinations should be resolved on summary judgment." *Lawyers' Comm. for Civil Rights of S.F. Bay Area v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114 (9th Cir. 1998)). A court grants summary judgment where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden to show there are no genuine issues of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

FOIA requires agencies to search for responsive records, which means "to review, manually or by automated means, agency records for the purpose of locating those records

which are responsive to a request." 5 U.S.C. § 552(a)(3)(D). As a general rule, courts require agencies to undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "When considering the adequacy of a records search, the agency has the burden to show that it has 'conducted a search reasonably calculated to uncover all relevant documents.'" *Albers v. FBI*, No. 16-cv-05249-BHS, 2017 WL 736042, at *3 (W.D. Wash. Feb. 24, 2017) (quoting *Zemansky*, 767 F.2d at 571). Furthermore, "[c]ourts do not focus on 'whether there might exist any other documents possibly responsive to the [FOIA] request, but rather whether the *search* for those documents was *adequate*.'" *Albers*, at *3. (alteration and emphasis in original) (quoting *Zemansky*, 767 F.2d at 571).

The adequacy of an agency's search is judged by a standard of reasonableness. *Zemansky*, 767 F.2d at 571. The agency is therefore under a duty to conduct a "reasonable" search for responsive records using methods that can be reasonably expected to produce the information requested to the extent they exist. *See* 5 U.S.C. § 552(a)(3)(C); *Zemansky*, 767 F.2d at 571. While "there is no requirement that an agency search every record system . . . or that a search be perfect . . . the search must be conducted in good faith using methods that are likely to produce the information requested if it exists." *Rodriguez v. McLeod*, No. 08-cv-0184, 2008 WL 5330802, at *2 (E.D. Cal. Dec. 18, 2008). Accordingly, the adequacy of the search is "generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

"In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky*, 767 F.2d at 571. These declarations "are accorded a presumption of good faith," and, absent contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA. *Ford v. U.S. Dep't of Justice*, No. 07-cv-1305, 2008 WL 2248267, at *2 (D.D.C. May 29, 2008) (quoting *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)) (approving reliance on affidavit of agency employee

responsible for coordinating FOIA search, although affidavit contained information provided to the affiant through her interviews of other individuals).

Plaintiff can only avoid summary judgment by offering specific evidence rebutting the agency's declarations. *See Ford*, 2008 WL 2248267, at *4. That evidence must be more than "[m]ere speculation as to the existence of records not located as a result of the agency's search." *Id.*; *see also Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 238 (D.D.C. 2017) ("[Plaintiff] does not point to any evidence indicating that text messages were used for agency business or otherwise show that searching text messages would be likely to lead to responsive documents."); *Mosby v. Hunt*, No. 09-cv-1917, 2010 WL 1783536, at *3 (D.D.C. May 5, 2010) ("Plaintiff's general criticism of the search fails to cast any doubt on defendant's evidence demonstrating an adequate search.").

## IV. DEFENDANT CONDUCTED AN ADEQUATE SEARCH.

### A. FHWA's Response to FOIA #1 Is Not in Issue.

Upon receipt of AIC's two FOIA requests, FHWA determined that the CFL was the program office reasonably likely to possess the responsive records, and thus Defendant tasked CFL to conduct the search. DSOF at ¶ 20. From approximately January to February 2023, the CFL FOIA team searched and gathered records responsive to both FOIA #1 and FOIA #2, searching in folders on the office shared drive and in its email system. DSOF ¶¶ 23-28, 34. It then, pursuant to FHWA's FOIA process, elevated the responses to the HAD FOIA office at headquarters. Because it was processing the responses pursuant to its first-in, first-out policy, HAD required time to perform its review before responses could be further elevated to the Office of the Chief Counsel for final review. In April, after the Office of the Chief Counsel's review of the FOIA #1 response was complete, FHWA issued its release to AIC. DSOF ¶¶ 15, 35-36, 38. While AIC's Complaint references both FOIA #1 and FOIA #2, AIC has provided no indication of its dissatisfaction with the substance of the release regarding FOIA #1, and FHWA is unaware of any deficiencies concerning its release with respect to FOIA #1. *See* DSOF ¶ 63. Moreover, because the standard is

not whether FHWA failed to uncover all potentially responsive documents, but instead whether FHWA conducted a reasonable search, AIC cannot now avoid summary judgment as to FOIA #1 by identifying isolated records that were missing from FHWA's response. *See Albers*, 2017 WL 736042, at *3 (quoting *Zemansky*, 767 F.2d at 571).

### B. While Imperfect, FHWA's Search Regarding FOIA #2 Was Reasonable.

The search for documents responsive to FOIA #2 was more complicated, and it is believed to be the primary basis for AIC's dissatisfaction with the FOIA responses. *See* DSOF ¶¶ 48, 49. In particular, Item No. 9 of FOIA #2 created confusion due to the particularities of the request. Essentially, AIC requested materials and communications prepared by Q.C. Testing. To identify the potentially responsive communications from Q.C. Testing, FHWA had to be able to identify Q.C. Testing employees on the Red Cloud Mine Road project. Initially, there was no known contract between AIC and Q.C. Testing, but rather between AIC and a related company called Bravo. DSOF ¶ 30. Later it was determined that AIC *did* have a contract with Q.C. Testing, but *not* with Bravo. DSOF ¶ 32. Still, the quality control manager who worked on site for the majority of the Red Cloud Mine Road project was an employee of Bravo, but not of Q.C. Testing. *Id.* Adding to the disarray, many of the communications that the CFL FOIA team found only copied Q.C. Testing employees, but were not prepared by Q.C. Testing employees. Given these issues, the CFL FOIA team reasonably concluded that both correspondence from Bravo employees, and correspondence only copying Q.C. Testing employees were non-responsive correspondence to Item No. 9. *See* 5 U.S.C. § 552(a)(3)(C); *Zemansky*, 767 F.2d at 571. The CFL FOIA team believed it produced all responsive records. DSOF ¶ 32.

The CFL FOIA team was focused on searching for communications on email, but did not search for text messages prior to issuing its release to FOIA #2. This was an oversight[2] that FHWA attempted to remedy when the issue was later identified by AIC

---

[2] Notably, text messages were only requested in Item 9 of FOIA #2, and not in any other item of either FOIA #1 or FOIA #2. *See* Exhibits C and D, FOIA #1 and FOIA #2, to DSOF.

14

after litigation commenced.[3] FHWA's attempts were hampered, however, by two complicating factors: the individual with whom AIC was primarily concerned, Quintana, was a former employee, so her government-issued phone had, by that time, already been decommissioned; and, in any event, AIC was primarily concerned with text messages that Quintana exchanged on her personal cell phone, over which FHWA had no control. DSOF ¶ 31; *see also* Attachment 4 to Ex. A (detailing the issue pertaining to the missing text messages).

FHWA had no obligation under FOIA to conduct a search for records on an employee's personal cell phone. FOIA requires that an agency release "agency records" that are not otherwise exempt from disclosure. *See* 5 U.S.C. § 552. In the Ninth Circuit, an "agency record" is something that "(1) the agency 'either create[d] or obtain[ed] the requested materials,' and (2) the agency is 'in control of the requested materials at the time the FOIA request is made.'" *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 407 (9th Cir. 2019) (quoting *Tax Analysts v. U.S. Dep't of Justice*, 492 U.S. 136, 144-45) (1989)). In the Ninth Circuit, courts may consider a variety of factors to determine whether an agency has control over a record, including whether those documents are part of the agency's system for preserving, retrieving, or disposing of documents. *Rojas*, 941 F.3d at 409. Here, even if AIC can establish that Quintana created agency records by sending text messages from her personal phone, FHWA was simply never in control of Quintana's personal cell phone, whether at the time Quintana sent the alleged messages, on December 15, 2022 (the date of FOIA #2), or at any time thereafter.

Moreover, it was not unreasonable for FHWA officials to initially choose not to search Quinanta's phones. Generally speaking, the Government acts reasonably in entrusting agency employees to search their own files for records responsive for FOIA requests. *See* 5 U.S.C. § 552(a)(3), (a)(4); *cf. Valencia-Lucena v. U.S. Coast Guard*, 180

---

[3] Due to the timing of the FOIA process for FOIA #2, AIC and FHWA did not have a dialogue about missing documents or other deficiencies with FHWA's document releases prior to the commencement of this litigation.

F.3d 321, 328 (D.C. Cir. 1999) (explaining that it is often necessary for agency employees that have a "close nexus" to a requested record to perform a reasonable search for that record); *Anguiano v. U.S. Immigration & Customs Enf't*, 356 F. Supp. 3d 917, 921 (N.D. Cal. 2018) (holding that agency completed an adequate search, based in part on agency employees' searches of their own files); *Hall & Assocs. v. U.S. EPA*, 83 F. Supp. 3d 92, 98 (D.D.C. 2015) (similar based on employees' search of their "own records"). This policy is both reasonable and logical, particularly where such records might exist on an employee's personal device, as such employee would have a reasonable expectation that agency personnel would have no right to access his or her personal cell phone.

Although Quintana did not search her personal phone initially (while she was an FHWA employee and part of the CFL FOIA team), later when FHWA later reached out to Quintana (upon receiving clarification from AIC), she provided 12 pages of text messages that FHWA then released to AIC. DSOF ¶¶ 53, 54. FHWA also attempted to resolve the issue by providing another 621 pages of text messages involving Quintana and others on the Red Cloud Mine Road project. DSOF ¶¶ 55-57. While AIC contends that these subsequent releases do not represent the entirety of text messages that they believe exist, the adequacy of FHWA's search is not judged by whether the search was perfect, or they searched every possible system or turned over every document that might exist. *See Rodriguez*, 2008 WL 5330802, at *2; *Albers*, 2017 WL 736042, at *3. FHWA's search was reasonable because, even though it was unable to obtain a former employee's personal cell phone to search for responsive text messages, it both (1) requested that she voluntarily provide those messages to FHWA, and (2) sought to uncover such messages through finding the other recipients of the subject text messages. Thus, FHWA's efforts to search for, obtain, and release such text messages to AIC was made in good faith and reasonably calculated to provide AIC with responsive documents.

FHWA's declaration by Judy Salomonson (DSOF, Ex. A) demonstrates that FHWA conducted a "diligent search for . . . [responsive] documents in the places in which they might be expected to be found." *Hamdan*, 797 F.3d at 772 (9th Cir. 2015). The Court

16

should afford this evidence significant weight. *See Withey v. FBI*, No. 18-cv-1635-JCC, 2020 WL 885974, at *2 (W.D. Wash. Feb. 24, 2020) (noting that agency declarations describing the search process are entitled to "a presumption of good faith"). Declarations are sufficient where, as here, they "provide[] detail as to the actual search [including] file[s] reviewed, locations searched, and manner and procedure for selecting and searching files." *Rodriguez*, 2008 WL 5330802, at *5. Defendant also took additional steps to confirm the reasonableness of its search and endeavored to remedy any potential deficiencies by continuing to search for and provide any additional responsive documentation, which efforts remain ongoing as of the time of this filing. DSOF at ¶¶ 48, 50-57, 62. Still, of the 28 items requested between AIC's two FOIA requests, AIC's dissatisfaction is limited to FHWA's response to four of those items: Nos. 7 through 10 of FOIA #2.

## V.  CONCLUSION

Defendant conducted several adequate searches in response to Plaintiff's FOIA request. The crux of Plaintiff's complaint is that she did not receive all records responsive to Items 7 through 10 of FOIA #2, including text messages from a former employee's personal phone. However, the adequacy of the search is not determined by the outcome. Plaintiff is therefore not entitled to relief with regard its FOIA request and judgment should be granted to Defendant.

Respectfully submitted this 26th day of July, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Lisa M. Hemann*
LISA M. HEMANN
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Pierce Libbey**
FR Law Group PLLC
4745 N 7th St., Ste. 210
Phoenix, AZ 85014
602-975-8657
plibbey@frlawgroup.com

**Scott Corey Ryan**
FR Law Group PLLC
4745 N 7th St., Ste. 210
Phoenix, AZ 85014
602-601-7913
sryan@frlawgroup.com

**Troy Blinn Froderman**
FR Law Group PLLC
4745 N 7th St., Ste. 210
Phoenix, AZ 85014
602-566-7425
tfroderman@frlawgroup.com
LEAD ATTORNEYS
ATTORNEYS TO BE NOTICED
*Attorneys for Plaintiff*

s/ Lisa Hemann
United States Attorney's Office