GARY M. RESTAINO
United States Attorney
District of Arizona

LISA M. HEMANN
Assistant United States Attorney
Arizona State Bar No. 024703
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, AZ 85004-4449
Telephone: (602) 514-7500
Fax: (602) 514-7693
Lisa.Hemann@usdoj.gov

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arrow Indian Contractors, Inc., <br><br> Plaintiff, <br><br> v. <br><br> United States Federal Highway Administration, Central Federal Lands Division, <br><br> Defendant. | No. CV-23-02085-PHX-MTL <br><br> **DEFENDANT'S STATEMENT OF FACTS** |

Defendant United States of America Federal Highway Administration, Central Federal Lands Division ("FHWA"), through undersigned counsel, hereby submits the following Statements of Fact in support of its Motion for Summary Judgment, filed concurrently herewith.

**Statements of Fact**

1. FHWA is a modal operating administration within the Department of Transportation ("DOT"). *See* Declaration of Judy Salomonson ("Salomonson Decl."), attached as Ex. A, at ¶ 4.

2. When FHWA receives a FOIA request, the first step is to determine which program offices within FHWA are reasonably likely to possess records responsive to that request, if any, and to initiate searches within those program offices. This determination

is based on the description of the records requested and requires a familiarity with the holdings of FHWA's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous FHWA program offices. Factors such as the nature, scope, and complexity of the request itself are also relevant. Ex. A, Salomonson Decl., at ¶ 4.

3.  Each program office within FHWA has a designated point of contact ("POC") who is the primary person responsible for communications between the program office and the main FHWA FOIA Office located in the Office of Administration ("HAD" or "the HAD FOIA office") in FHWA headquarters. Ex. A, Salomonson Decl., at ¶ 5.

4.  FOIA POCs are the FOIA professionals who directly interact with FOIA requesters and are responsible for the day-to-day implementation of the FOIA. Each POC is a person with knowledge about the operations of their program office. Ex. A, Salomonson Decl., at ¶ 5.

5.  FHWA's FOIA Program is decentralized, meaning that FOIA POCs in each of FHWA's approximately 73 Program, Division, or Federal Lands offices are responsible for processing requests assigned to their office. Ex. A, Salomonson Decl., at ¶ 5.

6.  The authority to issue initial determinations on FOIA requests, including initial denials of access to records and of fee waivers or fee waiver reductions has been delegated to all Associate Administrators, Chief Counsel, Chief Financial Officer, Directors of Field Services, Chief Technical Services Officer, Resource Center Director, Division Administrators, and FLH Division Engineers. Each of these officials is also authorized to re-delegate this authority to subordinate officials. Ex. A, Salomonson Decl., at ¶ 5.

7.  FOIA POCs receive requests in a variety of ways, including (1) directly from the requester via email, USPS or FedEx; (2) receiving an internal referral from the HAD FOIA office, which, again, houses the primary FOIA office in FHWA's headquarters in Washington D.C.; (3) via the DOT FOIA Public Access Link on DOT's website; or (4) via the National FOIA Portal (FOIA.gov). Ex. A, Salomonson Decl., at ¶ 6.

8. Once the appropriate program office for a given request is determined, the POC at the pertinent program office is provided with a copy of the FOIA request and is instructed to conduct a search for responsive records. Ex. A, Salomonson Decl., at ¶ 6.

9. Upon receipt, the POCs review the FOIA request along with any request-specific instructions that may have been provided. Based on the POC's experience and knowledge of their program office's practices and activities, the POC will forward the request and instructions to individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. Ex. A, Salomonson Decl., at ¶ 7.

10. Individuals and component offices are directed to conduct searches of the files, including both paper files and electronic files that, based on their judgment and knowledge of the way they routinely keep records, would most likely be the files to contain responsive documents. After those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, with instructions as to recommended withholdings as appropriate. Ex. A, Salomonson Decl., at ¶ 8.

11. Upon receipt of the potentially responsive records, the POC may sometimes finalize the FOIA responses on their own, or the POC may forward those records to the HAD FOIA office for assistance or additional review. In some instances, the HAD FOIA office (in collaboration with the Office of Chief Counsel) reviews the collected records for responsiveness and application of withholdings. Ex. A, Salomonson Decl., at ¶ 8.

12. FHWA program offices use various methods to maintain records and FHWA employees maintain records in several ways as individual employees, including storing electronic records on their individual computer hard drives, their individual system drives, their program offices' shared drive (if the office uses one), or USB storage devices. Ex. A, Salomonson Decl., at ¶ 9.

13. The determination of whether or not these electronic locations need to be searched in response to a particular FOIA request, as well as how to conduct any necessary

searches, is necessarily based on the manner in which the employee maintains his or her files. Ex. A, Salomonson Decl., at ¶ 9.

14. All FHWA employees have access to email. FHWA uses the Microsoft Outlook email system. FHWA employees use various methods to store their Microsoft Outlook email files. Like other searches of emails, an employee will complete a search of email archives if it is determined that the archive may contain potentially responsive documents; this determination is based on the FOIA request, any potential instructions provided by the HAD FOIA office and/or the program office POC, and his/her knowledge of the method in which he/she stores emails. Ex. A, Salomonson Decl., at ¶ 10.

15. FHWA processes FOIA requests as quickly as possible on a first-in, first-out basis. Ex. A, Salomonson Decl., at ¶ 11.

16. The time it takes to respond to each FOIA request varies depending on the complexity of the request itself and the backlog of requests already pending in FHWA's FOIA queue. Although FHWA makes every effort to respond to FOIA requests as quickly as possible, in some cases the Agency cannot do so within the time specified in the FOIA and additional time is needed. Ex. A, Salomonson Decl., at ¶ 11.

17. In Fiscal Year 2023, the Department of Transportation received 17,136 FOIA requests and processed 16,458 of those FOIA requests. Ex. A, Salomonson Decl., at ¶ 11.

18. Plaintiff Arrow Indian Contractors, Inc. ("AIC") entered a contract with the Federal Highway Administration Central Federal Lands Highway Division on July 30, 2021 for the Red Cloud Mine Road Project. *See* Except of Conformed Contract ("Contract Excerpt"), attached as Exhibit ("Ex.") B.

19. Plaintiff submitted two FOIA requests to Defendant. The first is dated December 5, 2022 and the second is dated December 15, 2022. Letter dated December 5 2022 ("FOIA #1"), attached as Ex. C; Letter dated December 15, 2022 ("FOIA #2"), attached as Ex. D.

20. The FOIA requests at issue in this case sought records maintained by FHWA's Central Federal Lands office ("CFL"). Therefore, the HAD FOIA office

determined that CFL should be tasked as the program office most likely to have responsive records. Ex. A, Salomonson Decl., at ¶ 12.

21. On December 9, 2022, DOT received a request under the Freedom of Information Act ("FOIA") from AIC President Sheila Curleyhair dated December 5, 2022 and submitted via the Department of Transportation FOIA Public Access Link. The request was assigned control number 2023-0044. *See* Ex. A, Salomonson Decl., at ¶ 13; Ex. C, FOIA #1.

22. On December 15, 2022, Curleyhair submitted a second FOIA request via e-mail, which was not initially received by the CFL and had to be resent. It was assigned control number 2023-0048. *See* Ex. A, Salomonson Decl., at ¶ 14.

23. The POC for CFL, Shannon Schreiner, contacted the employees that she determined would have records responsive to FOIA #1 and FOIA #2. Schreiner identified for the employees folders on the CFL shared drive where there were likely responsive documents. *See* Ex. A, Salomonson Decl., at ¶ 15.

24. CFL employees Dustin Robbins, Barbara Quintana, Julian Gonzalez, Ken Meister, James Rathke, Curtis Scott, and Andrew Dempsey searched and compiled responsive documents for the two FOIA requests. They, Schreiner, and Wendy Longley comprised the CFL FOIA team for AIC's two requests. *See* Ex. A, Salomonson Decl., at ¶ 15, 16.

25. On January 12, 2023, Longley allocated the appropriate staff to respond to each item of the FOIA requests, with Rathke, Quintana, Gonzalez, and Robbins as the leads on collecting documents relating to the different categories. CFL employees searched through emails and documents to try and locate content that might be responsive to the two FOIA requests. *See* Ex. A, Salomonson Decl., at ¶ 16.

26. CFL employees Shannon Schreiner and Jody Forman compiled and organized the responsive documents into folders. *See* Ex. A, Salomonson Decl., at ¶ 16.

27. Responsive documents were found on the CFL shared drive in a folder called "AZFLAP 202(2) Red Cloud Mine Rd." CFL employees searched for records

relating to Solicitation FHWA No. 6982AF21B000007, including the Final Acquisition Plan, the Written Engineer's Estimate, and FHWA evaluations regarding the Estimate. CFL employees also searched for files relating to FHWA Contract No. 6982AF21C000030. *See* Ex. A, Salomonson Decl., at ¶ 16.

28. On January 13, 2023, Longley sent an email summarizing the progress to date on FOIA #1 and FOIA #2. Regarding FOIA #1, all documents had been compiled and the team had identified those documents that should be withheld and/or redacted or released in full. Regarding FOIA #2, the project team was still compiling documents and noted that the team would likely have some documents to review for exemptions. *See* Ex. A, Salomonson Decl., at ¶ 17.

29. Also on January 13, 2023, Schreiner sent Curleyhair an email attaching a letter advising her that FHWA needed an extension of the deadline regarding FOIA #2 due to unusual circumstances. The letter explained that she and/or AIC had the opportunity to narrow the scope of the FOIA request to increase the processing speed. *See* Ex. A, Salomonson Decl., at ¶ 18.

30. On January 17, 2023, Quintana sent an email to the CFL FOIA team in reference to FOIA #2, Items 7-10. Quintana wrote:

> These four items reference documents between FHWA and Q.C. Testing Inc. The QC firm that provided the Quality Control Manager (QCM) and inspection/testing services was BRAVO CO. VI, LLC. AIC did not have a subcontract with Q.C. Testing for Contract 6982AF21C000030, Project AZ FLAP 202(2), Red Cloud Mine Road. BRAVO CO VI and Q.C. Testing are "sister" (or "brother") companies. The QCM for the referenced project works for BRAVO CO VI. There is a possibility that inspector(s)/tester(s) that performed work on the project actually worked for Q.C. Testing and may have been paid by them, but I don't know this for certain. We do not receive certified payrolls from QC firms so this can't be verified. We have the SF1413 and SF1413s for BRAVO CO VI, but there is no subcontract for QC Testing. With that said, I would say that we have no responsive records for Items #7, #8, #9 and #10. I wanted to confirm that I am correct in my assumption. I am checking to see if I have any emails with QC Testing, there may be a couple related to the lab that was provided and personnel for paving.

*See* Ex. A, Salomonson Decl., at ¶ 19.

31. On January 19, 2023, Quintana informed the CFL FOIA team that her emails for correspondence with Yuma County had been added to Item #11. Later that day, she emailed the team and stated the following:

> I am working on gathering the documents for Item #9, "All reports, recommendations, photographs, email correspondence, text messages and other documents prepared by Q.C. Testing, Inc." These consist of the following:
> - Daily inspection reports from Inspector/Testing who worked for QC Testing
> - A couple of emails that are directly from QC Testing
>
> There are numerous project emails where the inspector(s) that worked for QC Testing was cc'd, but these emails were not directly prepared by anyone from QC Testing, they are just cc'd. I am currently NOT including these emails since they were not prepared by QC Testing. If anyone wants me to include these emails, please let me know and I will work on gathering them and uploading them into Item #9.

*See* Ex. A, Salomonson Decl., at ¶ 20.

32. On January 20, 2023, Quintana write the team the following:

> I have mentioned this a few times to some of you. The items related to QC Testing are somewhat muddled with Bravo. AIC has a subcontract with QC Testing but did not have a subcontract with Bravo. The QCM that was on site for the majority of the project worked for Bravo, and had inspectors that worked for QC Testing. I asked AIC several times if they had a subcontract with Bravo or was the QCM working under QC Testing. I never did get an answer. It is my understanding that the QCM worked for and was paid by Bravo. This is clearly shown in the QC Plans submitted and all documents prepared by the QCM. The QCM handled all submittals and other project related items. AIC was cc'd on these. I have not provided any documents directly prepared by an employee of Bravo. I have provided all documents for anyone that worked for QC Testing.

*See* Ex. A, Salomonson Decl., at ¶ 15

33. On January 26, 2023, Ms. Schreiner reached out to the HAD FOIA office to see if some of the information in FOIA #2, namely, item numbers 4 and 5, might be publicly available. HAD responded on February 6, 2023 that some of the records might be available

on PACER.gov or the website for the Civilian Board of Contract Appeals. *See* Ex. A, Salomonson Decl., at ¶ 22.

34. On February 14, 2023, Curleyhair spoke with Schreiner about the FOIA requests and the extension. Schreiner explained that the requests had been forwarded to her superiors. The FOIA requests had been referred to the HAD FOIA office in headquarters for a second level of review. *See* Ex. A, Salomonson Decl., at ¶ 23.

35. On March 9, 2023, Schreiner emailed HAD for an update on the review process of FOIA #2. Later that day, HAD responded that FOIA #2 was in HAD's review queue with several FOIA requests ahead of it in line. HAD explained that HAD review had not started yet and the legal review in the Office of Chief Counsel would not begin until HAD completed its review. *See* Ex. A, Salomonson Decl., at ¶ 24.

36. On March 13, 2023, HAD informed Ms. Schreiner that FOIA #1 had been forwarded to the Office of the Chief Counsel for the final level of review. The HAD FOIA office also explained that FOIA #2 required additional work before HAD could complete its review. For example, the emails needed to be removed from batched form, attachments needed to be included with parent emails, and certain redactions had been fully applied but not marked with an exemption number. The HAD FOIA office asked Schreiner and the CFL FOIA team to resubmit the documents once the changes were made. *See* Ex. A, Salomonson Decl., at ¶ 25.

37. On March 28, 2023, Schreiner notified the CFL team that FOIA #2 was undergoing an additional level of review in the headquarters office. She told them that the FOIA documents had been sent to headquarters on March 8, 2023, but were returned for additional work. Schreiner told the team that she was working on completing the additional work, and that once done would return it to headquarters. The CFL FOIA team responded asking Schreiner if she needed any assistance. Schreiner replied that headquarters needed her to change bulk portfolio PDF files to individual PDF files, and that moving forward, they should no longer organize records into PDF portfolios. *See* Ex. A, Salomonson Decl., at ¶ 26.

38. On April 21, 2023, FHWA issued the Agency's final response to FOIA #1, providing AIC with sixteen (16) documents (176 pages) released in full and seven (7) documents (15 pages) released in part with redactions pursuant to FOIA Exemption (b)(6). *See* Final Response to FOIA #1 ("FOIA #1 Resp."), attached as Ex. E; Ex. A, Salomonson Decl., at ¶ 27.

39. Schreiner sent the response via FHWA's Secure Large File Transfer System, and the response was sent to Curleyhair's email address. *See* Ex. A, Salomonson Decl., at ¶ 27.

40. Subsequently, an employee in HAD called Curleyhair and informed her that FHWA was still processing FOIA #2. On April 28, 2023, HAD asked Schreiner to prepare a status update letter for FOIA #2. *See* Ex. A, Salomonson Decl., at ¶ 27.

41. Between May 2023 and November 2023, FHWA conducted multiple levels of review of FOIA #2 and encountered several administrative issues during the processing of the FOIA request. *See* Ex. A, Salomonson Decl., at ¶ 28.

42. On June 23, 2023, the Chief Counsel's Office was conducting final review of the response to FOIA #2 and identified issues that needed to be addressed by the CFL FOIA team. *See* Ex. A, Salomonson Decl., at ¶ 28.

43. Communications between the Chief Counsel's Office and the CFL FOIA team took place throughout August of 2023. *See* Ex. A, Salomonson Decl., at ¶ 28.

44. Subsequently in September 2023, FHWA experienced IT issues with the document production itself in that some of the responsive files had been corrupted and could not be opened, so the Chief Counsel's Office asked Schreiner to resend those files. *See* Ex. A, Salomonson Decl., at ¶ 28.

45. Those IT issues continued into October 2023 when some of the new files were not accessible due to password protection. *See* Ex. A, Salomonson Decl., at ¶ 28.

46. On October 5, 2023, AIC filed its Complaint alleging generally that Defendant was unlawfully withholding documents by failing to respond to Plaintiff's FOIA requests in a timely fashion. Doc. 1.

47.     FHWA resolved the outstanding substantive and administrative issues by early November and, on November 6, 2023, issued the final response letter to FOIA #2. The response indicated that approximately 2,169 pages were being released in full and 18 pages were being partially released as some of the material contained information exempt under FOIA exemptions (b)(5) and (b)(6). *See* Final Response to FOIA #2 ("FOIA #2 Resp."), attached as Ex. F; Ex. A, Salomonson Decl., at ¶¶ 28, 30.

48.     After litigation commenced, FHWA attempted to ascertain which documents AIC believed had been missing.  AIC responded that it believed FHWA had not provided all correspondence between FHWA and QC Testing, and identified specifically four items from FOIA #2:

> 7. Copies of all correspondence and attachments to said correspondence between FHWA and Q.C. Testing Inc. referring to or in any way related to AIC between July 30, 2021, and December 15, 2022.
>
> 8. Copies of all correspondence and attachments to said correspondence between FHWA and Q.C. Testing Inc. referring to or in any way related to Prime Contract 6982AF21C000030 between July 30, 2021, and December 15, 2022.
>
> 9. All reports, recommendations, photographs, email correspondence, text messages and other documents prepared by Q.C. Testing, Inc and provided to FHWA, relating to or referring to Prime Contract 6982AF21C000030 and/or AIC between July 30, 2021, and December 15, 2022.
>
> 10. Copies of all correspondence and attachments to said correspondence between FHWA and Q.C. Testing Inc. referring to or in any way related to Prime Contract 6982AF21C000030 between Jan 1, 2021, and December 15, 2022.

*See* Ex. A, Salomonson Decl., at ¶ 31.

49.     AIC also stated that an FHWA employee, Quintana, had "offered up her personal cell phone to all employees and subcontractors due to her Government cell phone not having as good as service on site." AIC further stated that it expected "to receive all text messages from her personal phone and government phone with communication from

any QC testing employee (especially Russ Roberts) related to the project." *See* Ex. A, Salomonson Decl., at ¶ 32.

50. Based on the foregoing clarifications from AIC, FHWA proceeded to search for more responsive records, including from Quintana's government-issued phone. Since Quintana had retired from FHWA on October 9, 2023, FHWA contacted the Office of General Counsel ("OGC"), who in turn contacted the Office of the Chief Information Officer ("OCIO") regarding Quintana's government phone. OCIO responded that Quintana's government phone had already been decommissioned, deactivated, and wiped. *See* Ex. A, Salomonson Decl., at ¶ 33.

51. FHWA, through OGC and OCIO, investigated other methods of retrieving any possible messages that existed on Quintana's government-issued phone, including by attempting to retrieve the messages directly from the service carrier, Verizon. FHWA was informed that a subpoena would be required to produce records but, regardless, Verizon does not produce text message content in response to civil subpoenas, and only discloses the content of text messages in criminal cases. *See* Ex. A, Salomonson Decl., at ¶ 33.

52. Since AIC explicitly identified Quintana's personal cell phone as an issue with FHWA's response to FOIA #2, FHWA also tried to locate and obtain text messages from Quintana's personal cell phone. This proved to be very difficult because FHWA never had control over Quintana's personal phone, and because Quintana was no longer a federal employee. *See* Ex. A, Salomonson Decl., at ¶ 34.

53. FHWA was able to reach Quintana and she agreed to conduct a search on her personal phone. On March 11, 2024, she found a text chain with Matthew Hadley, AIC's Superintendent, and Justin Renfro, an employee of QC Testing. *See* Ex. A, Salomonson Decl., at ¶ 34.

54. These were turned over to counsel and produced to AIC's counsel on March 29, 2024. *See* Defendant's First Supplemental Disclosure Statement ("1-Supp. Disclosure"), attached as Ex. G.

55. FHWA next attempted to obtain copies of the text messages through the other individuals participating in the text message threads. To that end, AIC, through counsel, provided a list of names of individuals who might have been copied on the pertinent text exchanges. *See* Ex. A, Salomonson Decl., at ¶ 35

56. One FHWA employee, Angel Ramirez, was copied on many responsive text messages between QC Testing, Bravo and Quintana, and was able to provide copies of multiple text messages. All the messages were released to AIC through counsel on April 17, 2024. *See* Ex. A, Salomonson Decl., at ¶ 35; Defendant's Second Supplemental Disclosure Statement ("2 Supp. Disclosure"), attached as Ex. H.

57. In total, FHWA released 621 pages of text messages obtained through the other employees. *See* Ex. H, 2 Supp. Disclosure, at p. 3 (pages AIC-DOT-002265 to 2886).

58. FHWA's understanding is that AIC currently seeks email correspondence and text messages prepared by Bravo employees (e.g., Mr. Russell Roberts). Ex. A, Salomonson Decl., at ¶ 31.

59. AIC's FOIA #2 does not ask for text messages and e-mails prepared by Bravo employees. *See* Ex. D, FOIA #2.

60. There could have been more responsive documents if Plaintiff had asked for email correspondence from Bravo employees, but that was not AIC's request. *See* Ex. A, Salomonson Decl., at ¶ 37; Ex. D, FOIA #2.

61. When FHWA re-reviewed item numbers 7 through 10 of FOIA #2, the FHWA team responsible for this FOIA began to suspect that there would likely be other sources of documents that might be responsive to items 7 through 10 that were not previously processed. *See* Ex. A, Salomonson Decl., at ¶ 38.

62. The Agency is currently processing this new batch of documents, including gathering and reviewing these documents for potential applicable FOIA exemptions. *See* Ex. A, Salomonson Decl., at ¶ 38.

63. Apart from items 7 through 10 of FOIA #2, FHWA is unaware of any other potential deficiencies in its responses to FOIA #1 and FOIA #2, nor has Plaintiff pointed

to any other potential deficiencies as of the signing of this declaration. *See* Ex. A, Salomonson Decl., at ¶ 39.

Respectfully submitted this <u>26th</u> day of July, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Lisa M. Hemann*
LISA M. HEMANN
Assistant United States Attorney

# **CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Pierce Libbey**
FR Law Group PLLC
4745 N 7th St., Ste. 210
Phoenix, AZ 85014
602-975-8657
plibbey@frlawgroup.com

**Scott Corey Ryan**
FR Law Group PLLC
4745 N 7th St., Ste. 210
Phoenix, AZ 85014
602-601-7913
sryan@frlawgroup.com

**Troy Blinn Froderman**
FR Law Group PLLC
4745 N 7th St., Ste. 210
Phoenix, AZ 85014
602-566-7425
tfroderman@frlawgroup.com
LEAD ATTORNEYS
ATTORNEYS TO BE NOTICED
*Attorneys for Plaintiff*

s/ Lisa Hemann
United States Attorney's Office